IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CIRCUITLIFE, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PERCUSSIONAIRE CORP., and )<br>MARK BAILLIE, )<br>)<br>Defendants. )<br>) | Civil Action No. 5:21-cv-000549<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff CircuitLife, LLC hereby alleges for its complaint against Defendants Percussionaire Corporation and Mark Baillie ("Defendants") as follows:

**INTRODUCTION**

After substantial time, expense, and effort involving research, development, and testing, CircuitLife, a medical device manufacturer located in San Antonio, Texas, is preparing to launch its innovative breathing circuits into the marketplace. The breathing circuits attach to ventilator devices, which are used in the treatment of acute and/or chronic respiratory illnesses. CircuitLife's breathing circuits are designed to be used exclusively with ventilator devices manufactured by the defendant Percussionaire Corporation.

Rather than engage in fair competition, Percussionaire has embarked on a campaign involving false advertising and unfair competition intended to sabotage the reputation of CircuitLife and its products, and to scare customers away from using CircuitLife products. Specifically, Percussionaire has issued a series of notices to its customers (and prospective customers of

CircuitLife) containing egregious, false and misleading statements to the effect that the CircuitLife breathing circuits are unsafe, untested, and compromise the ventilator itself (which costs several thousands of dollars). As a start-up company in the healthcare field, these false and misleading statements about the safety and efficacy of CircuitLife's products are causing CircuitLife tremendous irreparable and actual injury, as well as having a detrimental impact on the public interest in having accurate information on health and respiratory care options.

As explained herein, Percussionaire is aware of the unique expertise of CircuitLife's principal, Dr. Adel Bougatef, and has made every effort to prevent him from fairly competing with Percussionaire. Defendants' actions described herein are intentional and in bad faith, and they are likely to continue unless enjoined by this Court.

## NATURE OF THE CASE

1. CircuitLife brings this action seeking monetary damages, corrective advertising, injunctive relief, and other relief based on Percussionaire and its President and CEO Mark Baillie's false and misleading advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* CircuitLife also alleges claims for business disparagement, tortious interference with prospective business relations, injurious falsehood, and unfair competition under Texas law.

## THE PARTIES

2. Plaintiff CircuitLife is a Delaware limited liability company with its principal place of business at 610 E Market Street, #3007, San Antonio, Texas 78205.

3. Defendant Percussionaire Corporation is a Delaware corporation with a place of business at 130 McGhee Road, Suite 109, Sandpoint, Idaho 83864.

4. Defendant Mark Baillie is an individual who, on information and belief, resides in or

near Sandpoint, Idaho. He is the President and CEO of Percussionaire. Mr. Baillie personally signed the notices described herein, and otherwise authorized and participated in the wrongful acts that are the subject of this lawsuit.

## JURISDICTION AND VENUE

5. This action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et. seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6. Personal jurisdiction is proper in this district because Defendants have intentionally committed tortious acts within this district causing injury to CircuitLife within this judicial district. The claims asserted herein arise out of Defendants' contacts with the State of Texas and this judicial district.

7. On information and belief, Defendants sent the False and Misleading Notices (defined below) to Texas, and to this judicial district, with knowledge that such notices would be read by parties in this district and cause harm to CircuitLife in this district.

8. On information and belief, the False and Misleading Notices were read in Texas, and in this judicial district, by third parties, including, without limitation, by prospective customers, medical professionals, and others. Defendants' False and Misleading Notices have incorrectly shaped Texans' view, and others' view, of CircuitLife and its products.

9. The Defendants directed the False and Misleading Notices at the State of Texas and this judicial district with knowledge it would harm CircuitLife, a resident of this judicial district.

10. This created foreseeable, significant, intended effects on Texas and its residents. Thus, this forum is the location of the tortious act—the *locus delicti*.

11. Further, the actual content of Defendants' communications within the forum gives rise to a tortious cause of action here; this alone constitutes purposeful availment by Defendants. By

intentionally sending the False and Misleading Notices here, Defendants have purposefully availed themselves of the "privilege" of causing consequences and being tried in Texas. Because the Defendants voluntarily engaged in tortious acts in Texas and made purposeful contacts with Texas, the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

12.   Venue is also proper within this district pursuant to 28 U.S.C. §1391(b). The False and Misleading Notices upon which all of CircuitLife's claims are based were disseminated to persons within this district and read by persons within this judicial district. Thus, a substantial part of the events giving rise to CircuitLife's claims occurred in this district. CircuitLife also resides in this judicial district, conducts a substantial part of its business in this district, and has been injured in this district by Defendants' False and Misleading Notices.

## BACKGROUND

### IPV is Used to Treat Patients Suffering from Acute and/or Chronic Respiratory Illnesses

13.   CircuitLife and Percussionaire manufacture and sell competitive breathing circuits that attach to Intrapulmonary Percussive Ventilation (IPV) devices manufactured by Percussionaire.

14.   IPV is a ventilation technique that delivers small bursts of high-flow respiratory gas into the lung at high rates. This creates a global effect of internal percussion of the lungs, which can promote clearance of the peripheral bronchial tree.

15.   IPV therapy is used with patients who suffer from acute and/or chronic respiratory illnesses, such as asthma, pneumonia, bronchopneumonia, respiratory distress caused by COVID-19, cystic fibrosis, and neuromuscular diseases with respiratory complications.

16.   IPV therapy is used (and is often critical) in the treatment of acute respiratory illnesses in patients of every age group, from infants to the elderly.

17. IPV therapy is administered by trained healthcare professionals at healthcare facilities, such as hospitals, or at a patient's home. IPV treatments can be continuous, *e.g.*, in intensive care units, or it can be administered in sessions.

18. The IPV ventilators themselves are a significant investment, with the MSRP ranging from 7,000 – 53,000 dollars per unit. As such, one ventilator may be used among hundreds (or more) patients in its lifetime, and is often transferred between several patients in a single day (*e.g.,* in a hospital setting). Though each patient uses its own breathing circuit, it is critical that the breathing circuit is safe and effective, and does not contaminate the ventilator itself.

CircuitLife and its CL Breathing Circuits

19. CircuitLife is a start-up company located in San Antonio, Texas. It manufactures medical devices dedicated to elevating the standards of care in the management of cardiopulmonary illness.

20. CircuitLife is led by Dr. Adel Bougatef, MD PhD, a world-renowned expert in the field of respiratory medicine. Prior to CircuitLife, Dr. Bougatef served as: Clinical Director of the Neonatal Intensive Care at the Academic Children's Hospital in Brussels, Belgium; and a Professor of Pediatrics at the Free University of Brussels. He was also a former President of Defendant Percussionaire, as discussed in more detail below.

21. Dr. Bougatef has been using IPV therapy with his patients for decades, and has dedicated his life's work to research and innovation in this field.

22. Under Dr. Bougatef's direction and guidance, CircuitLife developed, and is currently selling two state of the art breathing circuits: the CLT-210 and the CLV-213 (the "CL Breathing Circuits"). The CL Breathing Circuits are designed to be used exclusively with IPV ventilators manufactured by Percussionaire. The CLT-210 is designed to be used with Percussionaire's IPV-1C

and IPV-2C ventilators, and the Impulsator device, the CLV-213, is designed to be used with Percussionaire's VDR-4 ventilator.

23. Dr. Bougatef has been using Percussionaire ventilators with his patients since 1986, after meeting Percussionaire's founder, Dr. Forrest Bird, at a conference involving state of the art mechanical ventilators. Over the years, Dr. Bird (now deceased) and Dr. Bougatef formed a friendship, and Dr. Bougatef essentially became Dr. Bird's trusted colleague.

24. Dr. Bougatef's unparalleled expertise in the field of IPV, and acute knowledge with respect to the workings of the Percussionaire ventilators specifically, led him to collaborate with Dr. Bird, and to become a guest lecturer and educator for Percussionaire for over ten years. In 2011, Dr. Bird persuaded Dr. Bougatef to move his family from Belgium to Idaho to serve as Percussionaire's President.

25. Dr. Bougatef served as Percussionaire's President for nearly two years. Since then, he has continued to use Percussionaire ventilators with his patients, and he has remained dedicated to improving upon the quality of IPV technology.

26. The CL Breathing Circuits created by CircuitLife are an alternative to the breathing circuits manufactured by Percussionaire. CircuitLife believes its CL Breathing Circuits are a superior alternative to Percussionaire's circuits. On information belief, no other parties offer an alternative breathing circuit that is compatible with Percussionaire's ventilators. Thus, the Parties are direct competitors.

## The Prior Lawsuit

27. In 2013, Dr. Bougatef and Percussionaire parted ways and he was no longer serving as Percussionaire's President.

28. Significantly, Percussionaire's Board of Directors asked Dr. Bougatef to remain involved with company, in a newly created role at the "Bird Institute" in which Dr. Bougatef would work on regulatory compliance and scientific advancement of IPV technology.

29. After the negotiations for the Bird Institute fell apart, Percussionaire filed a lawsuit against Dr. Bougatef and his wife (the "Prior Lawsuit"). The Prior Lawsuit was dismissed in 2016 pursuant to a confidential settlement agreement. The terms of that agreement are not at issue in this lawsuit.

<u>The Safety and Efficacy of the CL Breathing Circuits Has Been Tested and Validated</u>

30. In the years that have transpired since the resolution of the Idaho Lawsuit, CircuitLife has been researching, developing, and testing the CL Breathing Circuits. The CL Breathing Circuits were developed in collaboration with a well-known and decorated, certified medical device design company, with input from parties who care for patients and recognize the need for improvement in care for patients in need of IPV therapy.

31. CircuitLife maintains a Quality Management System (QMS) for the CL Breathing Circuits, and has attained ISO 13485-2016 certification for both of the CL Breathing Circuits.

32. There is also a Device History File (DHF) for each of the two CL Breathing Circuits which meets all regulatory requirements and regulations. The DHF includes risk management and analysis, biocompatibility testing, human factors and usability testing, engineering design verifications and validations, shelf-life and environmental testing, and clinical evaluation reports. CircuitLife's development and maintenance of such history files allowed it to become CE certified by Dekra (notified body ID number 0344). Each CL Breathing Circuit has a label displaying the CE certification.

33. The CL Circuits are also registered with the FDA. The associated technical files for CL Breathing Circuits comply with all FDA requirements (though FDA approval is not required for products of this nature). CircuitLife also followed FDA recommendations by utilizing a third-party certified laboratory to: (a) perform all FDA required biocompatibility testing, which, culminated in a toxicology report demonstrating the safety of both CL Breathing Circuits; and (b) develop and validate cleaning and disinfection protocols.

34. The Usability & Human Factor validation studies conducted by CircuitLife demonstrate both the safety and efficacy of the CL Breathing Circuits during use with Percussionaire Ventilators.

35. CircuitLife believes that its CL Breathing Circuits are superior to those offered by Percussionaire. For example, the CL Breathing Circuits are more durable than Percussionaire's circuits, and the CL Breathing Circuits also have better humidification of the gas delivered to the patient airways making it more comfortable to breathe (as opposed to dry air).

36. With its testing and desired certifications complete, CircuitLife is now in the process of marketing and selling its CL Breathing Circuits to distributors.

<u>Percussionaire's False and Misleading Notices</u>

37. Rather than endure fair competition with its own circuits (which it has never had to do in the past), Percussionaire set out to sabotage the CL Breathing Circuits and CircuitLife's reputation in the marketplace by issuing the following False and Misleading Notices to its customers.

A. <u>The March Notice</u>

38. On March 12, 2021, Percussionaire issued an "Advisory Notice" to its customers (a copy of which is attached hereto as Exhibit A (the "March Notice"). Following a caution symbol and

the words "WARNING!" in bold, red font, the March Notice falsely and/or misleadingly states the following in regard to the CL Breathing Circuits:

- That such breathing circuits are "deceptively advertised as compatible with Percussionaire ® ventilators;

- That such breathing circuits "**put[] the patient at risk**";

- That such breathing circuits are "non-conforming"; and

- That such breathing circuits "**fall short of quality standards and could possibly cause a customer's product to malfunction as well as cause serious safety issues**."

39. The March Notice also states in several places that use of the CL Breathing Circuits with any Percussionaire ventilator system "immediately voids the warranty for the device."

40. The March Notice concludes with the admonition, in bold, black and red font:

**Do NOT use!**

41. On information and belief, Defendants caused the March Notice to be sent to distributors, hospitals, and healthcare professionals, including but not limited to persons/entities located in San Antonio.

42. On information and belief, potential distributors of the CL Breathing Circuits, as well as hospitals and healthcare professionals, received the March Notice, including, but not limited to, hospitals and healthcare professionals located in San Antonio.

43. The March Notice was false, misleading, and reckless; it was also issued in bad faith. Percussionaire's clear objective was to scare its customers into believing that the competing CL Breathing Circuits are unsafe and that, if its customers dared to use those breathing circuits, they will lose the warranty on the ventilator itself.

B.   The May Notice

44. Just two months later, on May 10, 2021, Percussionaire issued a "Field Safety Notice" to its customers, signed by its President and CEO, Defendant Mark Baillie, a copy of which is attached hereto as Exhibit B (the "May Notice" and, together with the March Notice, the "False and Misleading Notices"). The May Notice contains more egregious, false and/or misleading statements in relation to the CL Breathing Circuits.

45. The May Notices included statements such as:

- there is no "clinical evidence the breathing circuits are safe and effective;"

- the "safety and efficacy has not been established for the use with any Percussionaire ventilators;"

- the CL Breathing Circuits have a "'moisturizer' which effectively is a nebulizer" and this was "another tactic to mislead the F.D.A. and avoid the need to submit the device and manufacturing facility for review;"

- "patient safety concerns have been raised by physicians and clinicians;"

- Safety validation has not been performed;

- "The CLT-210 can be incorrectly connected to the ventilator which may cause risk and harm to the patient;" and

- Percussionaire breathing circuits are "categorized as a class II product," whereas "CircuitLife registered as a Class 1 facility."

46. The May Notice also implies that CircuitLife has somehow committed trademark infringement by using Percussionaire's trademarks "without permission or authority from the company."

47. On information and belief, Defendants caused the May Notice to be sent to distributors, hospitals, and healthcare professionals, including persons/entities located in San Antonio.

48. As a result of the False and Misleading Notices described above, CircuitLife has been

operating in a state of damage control, trying to salvage its prospective business relationships, reputation and goodwill before it is beyond repair.

49. Indeed, a major distributor, who had agreed in principle to start distributing the CL Breathing Circuits, has indicated it cannot move forward with any distribution agreement until the claims in the False and Misleading Notices are dispelled or retracted.

### CircuitLife is Suffering Irreparable Harm

50. Defendants' actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure, CircuitLife's reputation and goodwill.

51. CircuitLife's reputation and goodwill are critical to its business dealings with at least three different populations—distributors of the CL Breathing Circuits, healthcare administrators, and potential patients.

52. Defendants' unlawful conduct has eroded CircuitLife's reputation and goodwill with potential distributors and IPV administrators by, among other things, creating a false impression that CircuitLife's breathing circuits "put[] the patient at risk."

53. Because the CL Breathing Circuits work only with ventilators manufactured by Percussionaire, Percussionaire's distributors and customers for its IPV-1C, IPV-2C and VDR-4 ventilators and compatible circuits are CircuitLife's potential (or actual) distributors and customers.

54. Given the direct competition between the parties, Defendants' false, misleading, and deceptive advertising claims and omissions necessarily, presumptively, and irreparably injure CircuitLife.

55. Given the widespread and serious nature of Defendants' intentional false and misleading advertising campaign, this is an exceptional case within the meaning of 15 U.S.C.

§ 1117.

56. CircuitLife has no adequate remedy at law that will compensate it fully for the continuing and irreparable harm and damages it has suffered and will continue to suffer if the wrongful conduct of Defendants is not enjoined and corrective advertising is not disseminated. CircuitLife has suffered irreparable harm to its goodwill, and it will continue to suffer such harm absent such relief.

## FIRST CLAIM FOR RELIEF

### False Advertising Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

57. CircuitLife repeats and realleges herein each and every allegation set forth in paragraphs 1 through 56 of this Complaint.

58. Percussionaire advertises, promotes, and sells its IPV ventilators and compatible circuits in interstate commerce.

59. On information and belief, the False and Misleading Notices were disseminated in interstate commerce by Percussionaire and Mr. Baillie.

60. Mr. Baillie personally signed the May Notice.

61. Defendants' False and Misleading Notices misrepresent the nature, characteristics, and quality of the CL Breathing Circuits.

62. Defendants' False and Misleading Notices have actually deceived and/or are likely to deceive a substantial portion of the targeted audience.

63. Defendants' False and Misleading Notices are material to, and likely to influence, purchasing decisions.

64. The actions of Defendants described above have at all times relevant to this action

been willful and intentional.

65. As a direct and proximate result of the actions of Defendants alleged above, CircuitLife has been irreparably harmed and damaged and will continue to be irreparably harmed and damaged, including through lost revenue and harm to their goodwill and reputation.

66. Defendants' acts complained of herein amount to false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

67. Unless enjoined, Defendants will continue to engage in the above-described unlawful conduct and will cause additional irreparable injury to CircuitLife for which it has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Business Disparagement

68. CircuitLife repeats and realleges herein each and every allegation set forth in paragraphs 1 through 67 of this Complaint.

69. Defendants knowingly or recklessly, and without regard to the truth, made and published materially false and disparaging statements regarding the CL Breathing Circuits.

70. Defendants lacked privilege or justification to make or publish these false and disparaging statements.

71. The statements were disparaging because, among other reasons, they created the false impression that the CL Breathing Circuits are not safe to use and that CircuitLife is trying to deceive its customers and/or the FDA.

72. As a direct and proximate result of Defendants' conduct, CircuitLife has suffered actual damage to its reputation and to its actual and prospective business relations, as well as other losses that it is entitled to recover at trial.

73. Defendants' acts complained of herein constitute business disparagement in violation of Texas common law.

74. Furthermore, Defendants' conduct was committed intentionally, knowingly, and with callous disregard of CircuitLife's legitimate rights, and thus CircuitLife is entitled to and seeks exemplary damages in an amount not less than the maximum amount permitted by applicable law.

## THIRD CLAIM FOR RELIEF

### Tortious Interference with Prospective Business Relations

75. CircuitLife repeats and realleges herein each and every allegation set forth in paragraphs 1 through 73 of this Complaint.

76. Defendants were aware of the prospective business relationships between CircuitLife and its prospective distributors.

77. Defendants were aware that CircuitLife was in discussions with these prospective customers in relation to the distribution of the CL Breathing Circuits.

78. Notwithstanding its actual awareness of these prospective business relationships, Defendants made and published false and disparaging statements regarding CircuitLife and the CL Breathing Circuits, with the conscious desire to prevent the fruition of these prospective business relationships.

79. Defendants made these statements with knowledge of their falsity, or recklessly, and without regard to the truth.

80. Defendants lacked privilege or justification to make these false and disparaging statements, and Defendants' conduct directly and proximately caused injury to CircuitLife. Accordingly, Defendants' conduct was independently tortious.

81. Defendant lacked privilege or justification to interfere in these prospective business relationships.

82. Absent Defendants' interference, CircuitLife likely would have entered into profitable business relationships with these prospective customers.

83. As a direct and proximate result of Defendants' conduct, CircuitLife has suffered actual damage to its reputation and to its actual and prospective business relations, as well as other losses that it is entitled to recover at trial.

84. Defendants' acts complained of herein amount to tortious interference with prospective business relations in violation of Texas common law.

85. Furthermore, Defendants' conduct was committed intentionally, knowingly, and with callous disregard of CircuitLife's legitimate rights, and CircuitLife is entitled to and seeks exemplary damages in an amount not less than the maximum amount permitted by applicable law.

## FOURTH CLAIM FOR RELIEF

### Injurious Falsehood

86. CircuitLife repeats and realleges herein each and every allegation set forth in paragraphs 1 through 85 of this Complaint.

87. Defendants communicated the False and Misleading Notices to third parties, *i.e.*, customers and/or prospective customers of CircuitLife.

88. The False and Misleading Notices contained several false statements concerning CircuitLife and/or the CL Breathing Circuits, which have caused CircuitLife actual damage to its reputation and to its actual and prospective business relations, as well as other losses that it is entitled to recover at trial.

89. Defendants' acts complained of herein amount to the tort of injurious falsehood in

violation of Texas common law.

90. Furthermore, Defendants' conduct was committed intentionally, knowingly, and with callous disregard of CircuitLife's legitimate rights, and CircuitLife is entitled to and seeks exemplary damages in an amount not less than the maximum amount permitted by applicable law.

## FIFTH CLAIM FOR RELIEF

### Unfair Competition

91. CircuitLife repeats and realleges herein each and every allegation set forth in paragraphs 1 through 90 of this Complaint.

92. Defendants' conduct described above constitutes unfair competition under the laws of the state of Texas.

93. Defendants' conduct is contrary to honest practice in commercial matters and has interfered and continues to interfere with CircuitLife's ability to conduct its business.

94. The nature of these practices is anticompetitive and injurious to CircuitLife, healthcare administrators and consumers.

95. Defendants' conduct is independently tortious or unlawful because, as described above, Defendants knowingly made and published false and disparaging statements regarding CircuitLife.

96. Defendants' conduct also unreasonably restrains trade and violates the spirit of laws ensuring fair competition.

97. Defendants' conduct has proximately caused and continues to proximately cause damages to CircuitLife as described above.

98. Defendants' acts complained of herein amount to unfair competition in violation of Texas common law.

99. Furthermore, Defendants' conduct was committed intentionally, knowingly, and with callous disregard of CircuitLife's legitimate rights, and thus CircuitLife is entitled to and seeks exemplary damages in an amount not less than the maximum amount permitted by applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, CircuitLife prays that this Court enter judgment in its favor on each claim for relief set forth above and award it relief including, but not limited to, the following:

A. An Order adjudging that Defendants are liable for false and misleading advertising in violation of Section 43(a) of the Lanham Act;

B. A nationwide preliminary and permanent injunction enjoining Defendants and Percussionaire's employees, officers, directors, principals, shareholders, subsidiaries, affiliates, agents, related companies, licensees, assigns, and successors, and all persons in active concert or participation with any of them, from engaging in any of the false and misleading advertising practices challenged in this Complaint, and directing all such parties to remove and/or cause to be removed from public display all false and misleading statements;

C. An Order directing Defendants to disseminate advertising to correct the harm done to consumers and CircuitLife by Defendants' false and misleading advertising practices challenged in this Complaint, as well as an award of damages sufficient to compensate CircuitLife for a corrective advertising campaign to rectify Defendants' illicit acts and counteract public concern;

D. An Order directing Defendants to file with this Court and serve on CircuitLife's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

E. An Order requiring Defendants to account for and pay to CircuitLife any and all profits arising from Defendants' unlawful activities described in this Complaint, and that such profits be increased in accordance with 15 U.S.C. § 1117 and other applicable laws;

F. An Order requiring Defendants to pay CircuitLife's actual and compensatory damages caused by Defendants' unlawful activities described in this Complaint to the fullest extent permitted by law, and trebling such compensatory damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

G. An Order finding that Defendants' unlawful conduct constitutes an exceptional case and requiring Defendants to pay CircuitLife's costs and attorneys' fees in an amount to be determined under 15 U.S.C. § 1117 and other applicable laws;

H. An Order awarding CircuitLife post-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961;

I. An Order awarding CircuitLife all costs incurred by them in connection with this lawsuit pursuant to 28 U.S.C. § 1920;

J. Subject to the discretion of the Court, given the egregious and intentional nature of the conduct alleged herein, and for deterrence purposes, an Order awarding CircuitLife exemplary or punitive damages; and

K. Such other and further relief as the Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CircuitLife demands trial by jury in this action of all issues triable by jury in this matter.

- 19 -

| | |
|---|---|
| Dated:  June 7, 2021 | Respectfully submitted,<br><br>/s/ J. Daniel Harkins<br><br>J. Daniel Harkins (Texas Bar No. 09008990)<br>Ryan Borelo (Texas Bar No. 24118813)<br>DYKEMA GOSSETT PLLC<br>112 E. Pecan Street, Suite 1800<br>San Antonio, Texas 78205<br>Tel: (210) 554-5500<br><br>Floyd A. Mandell<br>Carolyn M. Passen<br>Julia L. Mazur<br>KATTEN MUCHIN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, IL 60661<br>floyd.mandell@katten.com<br>carolyn.passen@katten.com<br>julia.mazur@katten.com<br><br>*pro hac vice applications forthcoming*<br><br>Attorneys for Plaintiff CircuitLife, LLC |